IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 94-60648

---

UNITED STATES OF AMERICA,

          Plaintiff-Appellee,

      versus

JIMMY D. MCGUIRE,

          Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Mississippi

---

October 31, 1996

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, DeMOSS, BENAVIDES, STEWART, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:

 We took this case en banc to consider the difficult problems attending application of United States v. Gaudin, 115 S. Ct. 2310 (1995), which held that materiality is a question for the jury, not the court. With the benefit of additional briefing and oral argument before the en banc court, we are now persuaded that the district court did not withhold the element of materiality from the jury on the count on which defendant McGuire was convicted. See Victor v. Nebraska, 114 S. Ct. 1239, 1243 (1994) ("proper inquiry is not whether the instruction could have been applied in unconstitutional manner, but whether there is a reasonable

likelihood that the **jury** did so apply it.") (emphasis in text).[1]

It is clear that Instruction 20, pertaining to a count upon which

McGuire was *acquitted*, incorrectly removed the issue of materiality

from the jury. Instruction 36, however, which specified the

elements of the only count for which McGuire was convicted, did not

do so. Finding no <u>Gaudin</u> error or other reversible error, we

affirm the judgment of conviction.

AFFIRMED.

## APPENDIX

### INSTRUCTION NO. 15

A separate crime is charged in each count of the indictment.

Each count and the evidence pertaining to it should be considered

separately and each element must be proved beyond a reasonable

doubt. The fact that you may find the defendant guilty or not

guilty as to one of the crimes charged should not control your

verdict as to any other of the crimes charged.

\*   \*   \*

### INSTRUCTION NO. 20

Title 26, United States Code, Section 7206(1), as charged in

Count 5 of the indictment in Criminal No. 1:93cr35BrR, makes it a

crime for anyone willfully to make a false statement on an income

---

[1]The dissent continues to adhere to the view that the instructions took the issue of materiality away from the jury with respect to McGuire's violation of 26 U.S.C. § 6050I. The instructions speak for themselves. We include the relevant portions of the jury charge in an appendix.

tax return.  "Willfully" means with intent to violate a known legal duty.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

> <u>First</u>: That the defendant signed an income tax return that contained a written declaration that it was made under penalties of perjury;
>
> <u>Second</u>: That in this return the defendant falsely stated the amount of gross receipts on the Schedule C for his law practice during 1988;
>
> <u>Third</u>: That the defendant knew the statement was false; and
>
> <u>Fourth</u>: That the defendant made the statement on purpose, and not as a result of accident, negligence or inadvertence.

If you find that the government has proved these things, you need not consider whether the false statement was a material false statement, even though that language is used in the indictment. This is not a question for the jury to decide.

*     *     *

INSTRUCTION NO. 36

Count 4 of the indictment charges the defendant with a violation of 26 U.S.C. § 6050I(f)(1)(B).  The statute provides in pertinent part that:

> No person shall for the purpose of evading the return requirement of this section--
>
> > (B) cause or attempt to cause a trade or business to file a return required under this section that contains a material omission or misstatement of fact.

3

The essential elements that must be proved under that section are:

FIRST, that the defendant knew of a trade or business's duty to report currency transactions in excess of $10,000;

SECOND, that with such knowledge, the defendant knowingly and willfully caused or attempted to cause a trade or business to file a report required under this section [an 8300 form] that contained a material omission or misstatement of fact; and

THIRD, that the purpose of the material omission or misstatement of fact was to evade the transaction reporting requirement.

In this case the trade or business alleged in the indictment is the defendant's law practice. You may find the defendant guilty of violating § 6050I(f) whether or not the trade or business filed, or failed to file, a true and accurate 8300 form. In other words, if you find beyond a reasonable doubt that the defendant caused or attempted to cause a trade or business to file a return that contained a material omission or misstatement of fact, and that he did so for the purpose of evading the transaction report requirements, then you should find the defendant guilty as charged as to this count. If you do not so find, then you should find the defendant not guilty.

4

DeMOSS, Circuit Judge, dissenting:[2]

In *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a `clear break' with the past." *Id*. at 328. Embracing a view previously expressed by Justice Harlan, the Court stated that "failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication." *Id*. at 322.

Such a new rule was announced by the Supreme Court on June 19, 1995, in *United States v. Gaudin*, ___ U.S. ___, 115 S. Ct. 2310, 2320, 132 L.Ed.2d 444 (1995), wherein the Court held that "[t]he Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged. The trial judge's refusal to allow the jury to pass on the `materiality' of Gaudin's false statements infringed that right." At the time the Supreme Court decided *Gaudin*, McGuire's appeal to this Court was awaiting oral argument and both sides filed supplemental briefs addressing the

---

[2] Judge Wiener and Judge Dennis join in the entirety of this dissent. Judge Smith joins in all but the last four paragraphs of this dissent but would affirm the conviction on the basis of harmless error.

applicability of the *Gaudin* decision to this case. Clearly, therefore, under *Griffith*, McGuire was entitled to claim whatever benefits the new rule in *Gaudin* made applicable to his case.

Obviously, if materiality is an element of the crime which must be submitted to the jury under *Gaudin*, then the next corollary question is how the materiality element should be submitted to the jury. The question of a proper jury instruction was, of course, not present in *Gaudin* because the trial court in *Gaudin* had simply instructed the jury that the issue of materiality was not a matter for the jury to decide. But in its analysis of why the issue of materiality was one which had to be decided by the jury, the Supreme Court made several comments relevant to determining the manner in which materiality should be submitted to the jury. The Supreme Court stated:

> Deciding whether a statement is "material" requires the determination of at least two subsidiary questions of purely historical fact: (a) "what statement was made?"; and (b) "what decision was the agency trying to make?". The ultimate question: (c) "whether the statement was material to the decision," requires applying the legal standard of materiality (quoted above) to these historical facts.

*Id*. at 2314. Earlier in its opinion, the Supreme Court favorably quoted the definition of "materiality" which the parties had recognized in that case:

> [T]he statement must have "a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770, 108 S. Ct. 1537, 1546, 99 L.Ed.2d 839 (1988).

6

*Id*. at 2313. While the criminal statute involved in **Gaudin** was 18 U.S.C. § 1001 (falsifying a material fact concerning a matter within the jurisdiction of a government agency), the same analysis should be applicable to the criminal statutes involved here in **McGuire**: 26 U.S.C. § 7206(1) (willfully drafting an income tax return which is not true and correct as to every material matter) and 26 U.S.C. § 6050I(f)(B) (causing a business to file a return regarding cash receipts over $10,000 which contains a material omission or mis-statement of fact).[3] Both of these returns were

---

[3] The indictment under which McGuire was convicted contained the following counts, and the jury's verdict to each of these counts is as indicated:

> Count 1: Conspiracy from August 1989 to December 1992 between McGuire and other individuals "both known and unknown to the Grand Jury" to defraud the United States by impeding, obstructing and defeating the functions of the Internal Revenue Service in the ascertainment, computation, assessment and collection of revenue: to-wit income taxes. In violation of 18 U.S.C. § 371.

> NOT GUILTY.

> Count 2: Between February 5, 1992 and continuing through February 19, 1992, McGuire did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, that is defendant deposited $20,000 in United States currency into a bank account at Hancock Bank, Gulfport, Mississippi, such $20,000 having been represented by a special agent acting in an undercover capacity, to be the proceeds of an unlawful activity. In violation of § 1956(a)(3)(B) and (C) of Title 18.

> NOT GUILTY.

> Count 3: Forfeiture of the $20,000 described in Count 2 which was represented to the defendant to be proceeds of cocaine trafficking pursuant to § 982, Title 18, and § 853, Title 21.
> NO JURY ANSWER REQUIRED.

> Count 4: In February 1992 McGuire did knowingly and

7

filed with the Internal Revenue Service which is clearly a government agency charged with making a variety of decisions on the basis of the information reported in each of these returns. So applying the reasoning and analysis of *Gaudin* as to the manner and form in which the issue of materiality under each of these statutes should be submitted to the jury would require the following:

    a.   Was there an omission or misstatement of fact in the return in question;

    b.   Was that omission or misstatement of fact material; and

    c.   A definition of "material" as being a matter which "would have a natural tendency to influence or be capable of influencing

---

willfully cause his law practice to file an IRS form 8300 in connection with a transaction involving the receipt of $20,000 of U.S. currency which contained material omissions or misstatements of fact. All in violation of §§ 6051I(f)(1)(B) and 7206(1) of Title 26.

GUILTY.

Count 5: On January 27, 1989, McGuire made and subscribed an individual tax return for the calendar year 1988 which was filed with the IRS on August 1, 1989, which tax return he did not believe to be true and correct as to every material matter in the return. In violation of § 7206(1) of Title 26.

NOT GUILTY.

Note that count 2, § 1956(a)(3)(B) and (C), money laundering, related to the very same $20,000 which the undercover agents delivered to McGuire as a retainer for his legal services and the jury found McGuire not guilty on this count. Secondly, note that the indictment states that count 4 is in violation of both § 6050I(f)(1)(B) and § 7206(1).

8

the decision of the decision making body to which it was addressed, i.e. the Internal Revenue Service.[4]

Now the government contends that Instruction No. 36, which was submitted as to count 4 of the indictment charging a violation under § 6050I(f)(1)(B), properly submitted the element of materiality to the jury. Regretfully, a majority of my colleagues at the en banc hearing have inferentially bought this contention. Insofar as a statement of the elements of the crime are concerned, Instruction 36 states:

> The essential elements that must be proved under that section are:
>
> FIRST, that the defendant knew of a trade or business's duty to report currency transactions in excess of $10,000;
>
> SECOND, that with such knowledge the defendant knowingly and willfully caused or attempted to

---

[4]    Since the Supreme Court decision in *Gaudin*, the Ninth Circuit has published a new form in its model jury instructions for use in counts relating to 18 U.S.C. § 1001 (false statement to government agency) which states in relevant part as follows:

> In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant [made a false statement] [used a writing which contained a false statement] in a matter within the jurisdiction of the [e.g. United States Customs Service];
>
> Second, the defendant acted willfully, that is deliberately and with knowledge that the statement was untrue; and
>
> Third, the statement was material to the _____'s activities or decisions.
>
> A statement is material if it could have influenced the agency's decisions or activities.

cause a trade or business to file a report required under this section [an 8300 form] that contained a material omission or misstatement of fact; and

THIRD, that the purpose of the material omission or misstatement of fact was to evade the transaction reporting requirement.

This submission is defective for the following reasons:

a.    It does not separately require the jury to determine that there was both an omission or misstatement of fact and that such omission or misstatement of fact was material; and

b.    It does not give a definition of "materiality" which would require the jury to address whether the omission or misstatement of fact had a natural tendency to influence or was capable of influencing the decision of the IRS.  Nowhere else in the Court's charge was there a definition of "materiality".  However, in the Court's charge under Instruction 20 regarding count 5 which charged violation of § 7206(1), there was the following paragraph:

If you find that the government has proved these things you need not consider whether the false statement was a material false statement, even though that language is used in the indictment. This is not a question for the jury to decide.

This concluding paragraph was taken verbatim from the Fifth Circuit Pattern Jury Instructions Manual (1990 edition) and reflects the prevailing practice, which existed in this Circuit prior to the Supreme Court's decision in *Gaudin*, that materiality was not an issue for the jury.  This manual proposes that this same paragraph be used as part of the pattern jury instructions in indictments charging violations under the following statutory provisions:

10

(a) false claim against the government, 18 U.S.C. § 287;

(b) false statements to firearm dealers, 18 U.S.C. § 922(a)(6);

(c) false statement to federal agencies and agents, 18 U.S.C. § 1001;

(d) false statements in bank records, 18 U.S.C. § 1805 – ¶ 3;

(e) false statements to a bank, 18 U.S.C. § 1014;

(f) false statements before grand jury, 18 U.S.C. § 1623;

(g) false statements on income tax return, 26 U.S.C. § 7206(1); and

(h) aiding and preparation of false documents under the Internal Revenue laws, 26 U.S.C. § 7206(2).

Furthermore, the 1990 edition of Fifth Circuit Pattern Jury Instructions does not contain any definition of the word "material" nor is there a pattern jury instruction for indictments brought under 26 U.S.C. § 6050I. The Fifth Circuit Pattern Jury Instruction manual is replete with comments and cites cases indicating that materiality is a matter for decision by the court and not by the jury. There is no pattern jury instruction in the Fifth Circuit manual indicating the proper way that materiality should be submitted as an issue to the jury under any other statutory provision.

Against this background of regular, consistent and routine withdrawal of the issue of materiality from the jury, the government now has the temerity to contend that, by some fortuitous circumstance, a rational decision was made in McGuire's trial to

11

include the element of materiality for submission to the jury in Instruction No. 36 on count 4. Anyone who has read the record in this case will find that contention unsupportable. Surely if it was the rational intention of the court and opposing counsel to submit count 4 to the jury for a materiality determination and count 5 without a determination of materiality by the jury, somewhere, somehow, the difference in the jury's responsibility under these two counts would have been emphasized and brought to the jury's specific attention, hopefully in writing, but if not, certainly through oral instructions. Yet nowhere in this record nor in the jury argument of either counsel was that distinction made; and, more convincingly, nowhere in the argument of either counsel was the subject of "materiality" discussed at all.

Furthermore, at the time of trial, there was no Fifth Circuit case which could have been cited for the proposition that the element of materiality found in § 6050I requires submission of the materiality element to the jury. But, if the Supreme Court's decision in *Gaudin* had been lying on the table when the district court and opposing counsel prepared the jury charge in *McGuire*, surely the format for instructions relating to the submission of count 4, § 6050I, and count 5, § 7206, would have been different from the instructions as actually submitted; and if *Griffith* means anything at all, it means that McGuire is now entitled to have the benefit of the new rules about materiality announced by *Gaudin* applied in determining the propriety of the instruction on count 4.

12

Some of my colleagues have reasoned that if there was error in the manner in which materiality was submitted to the jury as to count 4, such error was "harmless" or that the concept of "materiality" is a common everyday term for which the jury does not need a definition. In my view, such reasoning seriously undermines the impact of the decision in *Gaudin* to require the element of materiality to be submitted to the jury in criminal prosecutions. In my view, *Gaudin*'s requirement that materiality be tested by a finding that the false information be capable of influencing a decision of the government agency to which the form is addressed, has a significant and beneficial purpose in protecting the rights of citizens from government intrusions, which this case would so clearly demonstrate if tried under *Gaudin*'s new rule. In such event, all of the circumstances involved in count 4 grew out of a sting operation initiated by the government. The Internal Revenue Service had received information from various sources indicating that McGuire was receiving large amounts of cash as fees for his legal services and was not reporting those amounts of cash in either his income tax returns or under the report form required by § 6050I. As a result, McGuire became the target of an undercover sting operation in which Government Agent Narciso Hernandez posed as Hector Flores, Government Agent Henry Montes posed as Hector Martinez, and Government Agent David Barrientos posed as David Bolivar. Bolivar contacted McGuire with a fictional story that they wanted to hire McGuire to represent them in avoiding forfeiture of some $280,000 in cash which had been seized during a

13

traffic stop by the Mississippi Highway Patrol. During their discussions with McGuire, a retainer of $20,000 cash was agreed upon and, after some delay to get the cash together, they presented that sum to McGuire as a partial payment on his fee. The following day McGuire prepared IRS form 8300 reporting the receipt of $20,000 cash. Part I of this form, which required the identity of the "individual from whom cash was received," was filled in with the name "David Bolivar," the fictitious name used by Agent Barientos and the fictitious address and driver's license and social security number furnished by Agent Barientos. Part II of this form which required the identity of the "person on whose behalf the transaction was conducted" was left blank. Ten days later, McGuire filed an amended form 8300. Part I of the amended form again listed "Bolivar" as the payor but disclosed in Part II that "Hector Flores," the fictitious name used by Agent Hernandez, was the person on whose behalf David Bolivar paid the $20,000. Neither form used the name of Martinez, which was the fictitious name under which Agent Montez was operating. Obviously, had McGuire not filed a form 8300 at all or if McGuire had reported the receipt of only $10,000 rather than $20,000 as actually paid to him, the sting operation would have been successful in demonstrating that McGuire was not reporting at all or was inaccurately reporting the sums received by him in cash as attorney's fees. But neither of those circumstances occurred in this case. A very legitimate question arises as to the materiality of any of the rest of the information on the form 8300 because the government certainly knew that this

14

was a sting operation and that Bolivar, Flores and Martinez were not real people. Consequently, even if the government should argue that one of the purposes of form 8300 is to permit them to identify individuals who are using large sums of cash in business transactions, the information as to the "individual from whom cash was received" and "the individual on whose behalf the transaction was conducted" would be of no real value on the forms filed by McGuire because the government knew those were fictitious individuals. Surely the government could not contend that McGuire could be liable for using the fictitious names given him by the government agents in the sting operation. Likewise, the government would have no reason to pass on to any other government agency the fictitious names used by the agents in the sting operation as individuals who were likely transacting business with large sums of cash. In short, McGuire, the target of this sting operation, filed a form 8300 and later filed an amended form 8300 which correctly reported his receipt of the correct sum of money paid to him. The rest of the information on these forms would not produce any decision or action by the Internal Revenue Service and a reasonable jury could conclude that any omission or misstatement in the rest of these forms was <u>not</u> material to the Internal Revenue Service. All of which emphasizes the importance of the jury being properly instructed as to the definition of materiality and then being permitted to decide the ultimate mixed question of fact and law which *Gaudin* so clearly says is the jury's ultimate decision.

15

Finally, I must register my dissent from the enigmatic per curiam opinion which the majority has filed in this case. If, as the majority seems to recognize, *Gaudin* held that materiality is a question for the jury, then the corollary to that basic rule is that the issue of materiality must be properly submitted to the jury. The majority states that the district court did not withhold the element of materiality from the jury but that does not address the issue of whether materiality was properly submitted. If the element of materiality is improperly submitted to the jury that is just as incorrect as not submitting it at all. As discussed earlier, there are genuine and serious defects with the way the district court submitted the elements of § 6050I in Instruction 36. But if the majority genuinely believes that the way the district court submitted the issue of materiality in Instruction 36 is correct and proper, then they should clearly so hold, and that format can then become the established precedent for this Circuit and the basis upon which a pattern jury instruction could be developed regarding submission of the issue of materiality.

Likewise, a majority holding that Instruction 36 was a proper submission of the materiality issue to the jury would give McGuire a clear issue upon which to seek a writ of certiorari from the Supreme Court. Interpreting *Gaudin* as defining error only to the extent that the district court expressly withholds materiality from the jury's determination is a stingy and hyper-technical interpretation which is more consistent with a judicial philosophy that says that the primary role of this Court is to sustain a

16

conviction. Rather, we should be governed by a judicial philosophy that says that the primary role of this Court is to see that justice is done in each individual case. When the Supreme Court announces a fundamental change in the law to the extent involved in *Gaudin*, and when the Supreme Court has set an established policy that such changes in the law shall be applied to cases pending on appeal as it has done in *Griffith*, then a philosophy of dispensing justice in an individual case will be better served by giving the defendant the benefit of a retrial at which the district court, the prosecutor and defense counsel can all give full consideration to the change of law involved.

## CONCLUSION

Essentially, McGuire's case was tried on the wrong premise, i.e., that materiality was not a question for the jury. Inadvertently, McGuire's count of conviction was submitted to the jury without the standard language for withdrawing the materiality issue from the jury contained in every pattern jury instruction in the Fifth Circuit. As submitted, the definition of the elements of § 6050I failed to require a separate determination of materiality as an element of the crime and failed to define the concept of materiality itself. This conviction should be reversed and remanded for a new trial where the element of materiality could be properly submitted to the jury as required by *Gaudin*.

17